# Commonwealth of Pennsylvania v. Dr. W. F. Mitchell, Appellant.

*Criminal law—Refusal of new trial—Adequacy of charge.*

The refusal to grant a new trial in a criminal case is not error where on the whole evidence, if believed, no reasonable doubt is raised as to the defendant's guilt and where the trial was conducted with great care, the attention of the jury directed to the measure of proof necessary and to the presumption of innocence, and where the evidence was submitted in a clear and impartial manner.

*Criminal law—Evidence of letters, etc., indicating an expected meeting.*

Where the crime of abortion is charged as incident to the meeting of two people, which is admitted to have taken place, evidence is admissible as tending to prove a step in the commonwealth's case of the fact that deceased addressed and mailed a letter to defendant, and subsequently wired him to meet her on a certain train; such evidence being admissible as tending to prove that these two persons had been in communication prior to the subsequent meeting on the train designated in the telegram.

Argued Oct. 20, 1897. Appeal, No. 85, April T., 1898, by defendant, from judgment of Q. S. Somerset Co., Feb. Sess., 1897, No. 14, on verdict of guilty. Before RICE, P. J., WICKHAM, BEAVER, REEDER, ORLADY, SMITH and PORTER, JJ. Affirmed.

Indictment for procuring abortion. Before Longeneck-er, P. J.

It appears from the record and evidence that the defendant, Dr. W. F. Mitchell, a practicing physician in Petersburg where he was known among the front ranks of his profession, was indicted on the above charge. The commonwealth produced evidence to show that a letter and telegram addressed to defendant had been sent by the deceased; that subsequently defendant called on the deceased at a hotel in Somerset; that deceased subsequently went to Pittsburg where she died in a hospital as the result of a criminal operation. Defendant was examined as to what took place at the interview at the hotel and the condition disclosed by his evidence appeared to be somewhat inconsistent with the testimonies of the authorities of the hospital.

Defendant denied having received either the telegram or the letter offered in evidence or that he had ever seen or heard from the deceased prior to having been called in by her in a professional capacity at the one interview at the hotel in Somerset. He further denied performing any criminal operation.

Verdict of guilty and sentence thereon. Defendant appealed.

*Errors assigned* were (1) In admitting evidence on the following offer and objection, Miss Lizzie Thomas, assistant in the post office at Scott Haven, Pa., being on the stand: "Mr. Ruppel: Let us have an offer. Mr. Kooser: Counsel for the commonwealth propose to prove by the witness on the stand that a few days before the 30th of December, 1896, near about Christmas, Miss Sadie E. Beal handed to the witness a letter addressed to Dr. Mitchell, Addison, Pa.; that that letter was mailed on the next mail going east, in the direction of Addison from Scott Haven. This to be followed by proof that the defendant was the only Dr. Mitchell resident at Addison in December, 1896, and to be followed by further proof that on the 30th of December, 1896, Sadie E. Beal telegraphed Dr. Mitchell to Confluence, Pa., in these words: 'Will be on 6 instead of 14, meet me,' signing instead of her own name 'S. E. B. Andrews.' Mr. Ruppel: This is objected to for the following reasons: 1. It is not shown that the Dr. Mitchell so addressed is the defendant, as there were no initials on the letter. 2. It is not proposed to be shown by proof on part of the commonwealth that Dr. Mitchell, the defendant, received such a letter. 3. The

defendant denies having received such a letter. 4. The evidence is irrelevant and immaterial. The Court: With regard to the testimony embraced in the offer tending to make out a step in the commonwealth's case, the evidence is proper for that purpose. We admit it and note an exception to the defense. The witness then testified as follows: 'Q. Did you know Sadie E. Beal? A. Yes, sir. Q. Who was with Mr. Madore in December last? A. Yes, sir. Q. Do you have any distinct recollection of her handing you a letter in the latter part of December, and if so, state about when it was and to whom addressed and to what point addressed. A. Well, I remember she came there one morning and handed me two letters, one addressed to Dr. Mitchell, and it was Somerset county; I don't remember the address, but think it was Addison, and I sent it on the 2 o'clock mail." (2) In admitting evidence on the following offer and objection: "Mr. Kooser: We offer in evidence all the exhibits identified . . . . the telegraphic message as written, signed S. E. B. Andrews, at McKeesport and sent to Confluence, and the message received at Confluence, and the entries on the registers of the Hotel Vannear in Somerset and of the Hotel Federal in Allegheny. Mr. Ruppel: We object to the telegram at McKeesport written by S. E. B. Andrews, as we got no such telegram. The Court: These exhibits are admitted. The exhibit marked 'F' which is objected to, is also admitted upon the testimony of the two operators, the one at McKeesport and the one at Confluence; the testimony of the one being that she sent the message, the substance of the message, and that of the other being that she received it, and the two messages being the same in substance and differing merely in the initials of the name attached, both being signed 'Andrews.' We think they are sufficiently identified as the same message. Note an exception to the defendant as to the McKeesport telegram." (3) In charging the jury as follows: "It is charged that the defendant met Sadie E. Beal on the 30th of December, by pre-arrangement, for the purpose of a criminal operation, the theory being that he had been previously advised by letter and understood the purpose of the meeting; that the message of the morning merely apprised him of her coming by a particular train, and that the operation was in fact performed in the few moments he is shown to have been in

her room at the hotel. The only evidence produced of any communication prior to the message received by him at Confluence on that morning, related to a letter which the young lady acting as assistant postmistress at Scott Haven testified Miss Beal had mailed at her office the latter part of December, and which was addressed to Dr. Mitchell, as she thought, at Addison, in this county. That letter she said she sent on the 2 o'clock east bound train that afternoon. With regard to a letter thus mailed and not shown to have been received, the law raises a mere presumption that the person addressed received it through the ordinary course of the mails. Against this presumption the defendant positively testifies that he never did receive it. If you believe him it takes out of the case all the significance attached to the alleged previous communication. If not, it might be a potent circumstance in construing the conduct of the parties on the meeting upon the train after the message from McKeesport. The facts connected with the message delivered to the defendant at Confluence have been very fully discussed on both sides, so I need not refer to them more at length."
(4) In charging the jury as follows : " After the girl died in the hospital and it was manifest an abortion was produced by the criminal act of some one, it seems suspicion was directed to this defendant, and he, to relieve himself of that suspicion, went to the district attorney's office and related to those present his version of the visit he had made to the unfortunate woman's room. It is around this statement that the most serious aspects of the case gather. Just what his statement of the affair then was, has become the subject of serious conflict in the testimony of those who were present. Four of them unite substantially in saying that he stated his examination of the woman's parts developed the fact that a rupture of the sack containing the fœtus had already occurred, that the waters had been draining from it and the discharge had in fact attained an offensive odor, while the os, or mouth of the womb, was already greatly dilated, as illustrated by the witnesses. These conditions, you will recall, are inconsistent with those described as found on her arrival at the hospital. It will probably puzzle you to understand how a woman with that degree of dilation of the neck of the womb, and nature struggling to expel the fœtus, could travel the many miles covered by Sadie E. Beal's journey that

day.   However, it is only the statement which Dr. Mitchell is alleged to have made that day in which that condition is described, and the controversy is between the witnesses as to the manner in which he did describe it.   On the part of the defense two witnesses were called who were present and they say no such dilation was exhibited as is stated by the witnesses of the commonwealth, but as they illustrated it with their hands the neck or mouth of the womb was almost closed.   And the witnesses are also in conflict as to what he said about the condition of the waters coming from the woman and the nature of the discharge."    (5) In refusing binding instructions for defendant. (6) In the answer to the third point of defendant, as follows: " That all evidence in this case relating to the alleged mailing of a letter by Sadie E. Beal to the defendant must be entirely ignored by the jury in the consideration and determination of the case.   *Answer:* Refused."    (7) In overruling motion for a new trial.

*W. H. Ruppel* and *W. H. Koontz*, with them *J. H. Uhl* and *John R. Scott*, for appellant.—The prima facie proof that depositing at defendant's office a properly addressed, prepaid letter, raises a presumption that it reached its destination in due course of mail, may be rebutted by showing that it was not received. In all the cases, however, that have been ruled by the Supreme Court in this state, the offer to prove the contents of the letter, accompanied the offer to prove the mailing of it: Ins. Co. v. Toy Co., 97 Pa. 424; Jansen v. McCorkell, 154 Pa. 323.

In the case now before the court, it was not proposed to show the contents of the letter, nor that it was received by the defendant, and the evidence in the case failed to show any previous acquaintance between Miss Beal and the defendant, and there was not a particle of evidence as to the contents of the letter. The evidence, however, went to the jury, from which they were led to infer that the contents of the letter were that the defendant should perform a criminal operation upon her.

No argument offered or paper-book submitted for appellee.

OPINION BY ORLADY, J., January 18, 1898:

The defendant was convicted on an indictment in which the crime of abortion was charged.   Sadie E. Beal, an unmarried

woman whose residence was at Sand Patch, Somerset county, Penna., died in Allegheny City as the result of a premature birth which had been induced by unnatural causes. When the defendant learned through the newspapers that a criminal operation had been performed on her at a hotel in Somerset, he went to the district attorney's office and made a statement that he had gone to the room of Miss Beal in the Hotel Vannear, and there made an examination of her person after refusing to aid her in procuring an abortion.

The first and second assignments of error must be overruled. The contents of the letter were not offered, nor did the commonwealth propose anything beyond establishing the fact that a letter had been sent. That fact standing alone was harmless, but taken in connection with the telegram, and the subsequent meeting of the parties, it was an item of evidence worthy of consideration. So also was the telegram. The testimony of the sending and receiving operator proved that her message had been received by the defendant, and however slight that link in the chain was, it was yet entitled to be received in evidence with the letter for the very purpose as suggested by the learned trial judge,—"as tending to make out a step in the commonwealth's case."

The contents of the letter and the general meaning of the telegram were not material, but they tended to prove that these two persons had been in communication prior to their meeting on the train, and that this meeting was the result of design and not of accident. Proof of any system or means which would suggest a previous acquaintance would be subject to a like objection. It was not so much what was written as the fact that the defendant did not meet Miss Beal on the train as an unexpected stranger. In the authorities cited by appellant, the contents of the letter in each case was the important matter, and they do not apply under these facts.

The trial was conducted with great care, and the attention of the jury was fairly directed to the measure of proof necessary, and to the presumption of innocence to which the defendant was entitled, to wit: "Are there such circumstances proved beyond a reasonable doubt in each instance, as to make out the separate elements necessary to prove that the defendant was guilty of the crime charged?"

The evidence was submitted in a clear and impartial manner. The high character of the defendant and misstatements of the dead girl were of great weight, and whatever of doubt there was when the commonwealth rested, it was removed by the damaging admissions of the defendant.   On the whole evidence there was not such doubt of guilt as to warrant a new trial and it was properly refused.

The judgment of the court below is affirmed, and it is now ordered that W. L. Mitchell be remanded to the custody of the keeper of the county jail of Somerset county, there to be confined according to law for the residue of the term for which he was sentenced, and which had not expired on the 5th day of August, 1897, and that the record be remitted to the said court, that this order may be effectual. ·